EMPIRE STORAGE AND ICE COMPANY, a Corporation, v. JOSEPH GIBONEY, HAROLD HACKELL, PAUL MANDALIA, SAM IPPOLITO, HARRY WESTON, WALTER DOWNEY, ROY UTTINGER, JAMES PIKE, TERRILL HENRY, A. J. JENKINS, Individually, and as President of the ICE AND COAL DRIVERS AND HANDLERS LOCAL UNION No. 953, Appellants.—No. 40099.—210 S. W. (2d) 55.

Court en Banc, March 8, 1948.

Rehearing Denied, April 12, 1948.

672

*Clif Langsdale* for appellants.

*Richard K. Phelps* and *Jerry T. Duggan* for respondent; *Gage, Hillix, Shrader & Phelps* of counsel.

[55] DOUGLAS, J.—Plaintiff corporation maintains a cold storage public warehouse where it stores perishable foodstuffs and other perishable merchandise owned by its customers. It also manufactures and sells ice which constitutes from fifteen to twenty per cent of its entire business. Plaintiff's employees are completely unionized by both the C. I. O. and the A. F. of L. The ice which it sells is a union product, not a non-union product. There is no labor dispute of any kind between plaintiff and its employees.

Defendants are members and officers of a labor union, the Ice and Coal Drivers and Handlers Local Union No. 953, which is affiliated with the American Federation of Labor. Its membership is composed of [56] truck drivers for soft drink manufacturers, ice, and coal dealers. The membership also includes individual ice peddlers who operate their own trucks in carrying on their own businesses of selling ice at retail. About eighty per cent of the two hundred ice peddlers doing business in Kansas City are members of the union. The defendants engaged upon a campaign for the purpose of unionizing the remainder. One of the reasons was to establish a minimum wage of $4.00 per day for any helper who may be employed by a peddler. The union has obtained agreements from all the other manufacturers and distributors of ice in Kansas City under which they are bound not to sell ice to non-union peddlers.

For over twenty years plaintiff has been selling ice at wholesale to individual ice peddlers. The ice peddlers are not employees of plaintiff and never have been. There is no evidence that plaintiff has ever engaged in distributing ice to customers at retail. Sales of ice to peddlers are completed at plaintiff's plant at wholesale rates. Thereafter the peddlers resell the ice at retail to their own customers

without being subject to any supervision or control by plaintiff. So far as plaintiff is concerned the peddlers are independent contractors. Only twelve to fifteen peddlers are regular customers of plaintiff.

Defendant Jenkins, President of the Local Union, demanded that plaintiff stop selling ice to non-union peddlers, under the threat he would use means at his disposal to enforce his demand. Plaintiff refused his demand and a picket line was placed at its plant with the the result that all deliveries to and from the plant by union drivers were halted. Drivers hauling perishable foodstuffs to plaintiff's plant could not deliver them for storage, and tenants of the storage house could not obtain their foodstuffs stored there. There was no violence. About eighty-five per cent of the plaintiff's storage business was stopped by the picket line. Defendants insist the only purpose of the picket line was to compel plaintiff to stop selling ice to non-union peddlers, and to obtain such result they had to interfere with plaintiff's business.

Plaintiff brought suit to restrain the picketing on the ground it was pursuant to an unlawful combination in restraint of trade to prevent plaintiff from carrying on its business including the sale of ice, and therefore the picketing was unlawful. Defendants answered they had the right to picket under the freedom of speech provisions of the Federal and State Constitutions.

After a hearing the trial court found defendants were unlawfully conspiring in restraint of trade, the picketing was for an unlawful purpose, and there was no labor dispute between plaintiff and its employees or between plaintiff and defendants. The court permanently enjoined defendants from picketing plaintiff's plant. Defendants have appealed.

■ Section 8301, R. S. 1939, Mo. R. S. A. of the article of our statutes entitled ''Pools, Trusts, Conspiracies and Discriminations'' forbids a combination in restraint of trade and declares it a conspiracy, as follows:

''Any person who shall create, enter into, become a member of or participate in any pool, trust, agreement, combination, confederation or understanding with any person or persons in restraint of trade or competition in the importation, transportation, manufacture, purchase or sale of any product or commodity in this state, or any article or thing bought or sold whatsoever, shall be deemed and adjudged guilty of a conspiracy in restraint of trade, and shall be punished as provided in this article.''

The court en banc has recently held this statute to apply to a situation similar to the one we have here in the case of Rogers v. Poteet, 355 Mo. 986, 199 S. W. (2d) 378, and that decision is controlling here and rules this case.

In the Rogers case members of the Milk Drivers and Dairy Employees Local Union combined together to prevent rural milk haulers,

independent contractors who were not members of the union, from delivering milk to the dairies' milk processing plants in Jackson County. The court held such combination was "a confederation in restraint of competition in the transportation of fresh fluid milk to all the milk processing plants in that area", pointing out that Section 8301 expressly forbids a combination [57] in restraint of competition in the transportation of commodities.

On the same issues raised here as to the constitutional rights of the defendants to free speech the court said: "In other words, outside of the fundamental guaranties in the Bill of Rights in the Federal and State Constitutions, the question of the legality of such combinations is one of statutory law, not constitutional law." The court held the conspiracy between the union members violated Section 8301 and the common law, and was not protected by the First and Fourteenth Amendments of the Federal Constitution, and Sections 8, 9 and 10, Article I of the Constitution of Missouri, 1945.

The instant case appears to be even a stronger case than the Rogers case. The plaintiff in that case was an individual hauler whom the union was trying to force into its ranks. But the plaintiff here is a business establishment which is being threatened with the alternative of either ceasing to furnish ice to some of its customers or having its business destroyed through a local transportation combination, substantially denying delivery service to or from its plant in connection with its principal business activity which is storage, not ice selling.

Following the principle laid down in the Rogers case we must hold here that the picketing is unlawful because a combination of union truck drivers involving most of the delivery service transportation in Kansas City comes equally within the condemnation of Section 8301 when it abandons its legitimate sphere of collective bargaining and other properly related dealings with its employers, and seeks to dictate the terms under which an establishment will be either permitted or denied local transportation service.

The defendants have used their local transportation combination improperly to threaten and to produce injury and damage through a boycott of plaintiff's business, and incidentally to injure the business of citizens who are regular customers of its cold storage warehouse, by cutting off supplies to and from its customers. This misuse of their power over local transportation is all the more aggravated by the fact plaintiff's plant is fully unionized and there is no labor dispute between plaintiff and its employees, and there is no labor dispute as the term has been construed by court decisions between plaintiff and defendants, nor even any lawful labor grievance between plaintiff and defendants.

The admitted purpose of defendant's picketing is clearly in violation of Section 8301. Defendant Jenkins testified his union had made agreements with the other ice companies of Kansas City under

which the companies agreed not to sell ice to non-union peddlers. By their picketing defendants were attempting to force plaintiff to become a party to such combination. A combination for the purpose of refusing to sell to a certain person or persons is in direct violation of Section 8301. Our courts have so held in a number of cases. Reisenbichler v. Marquette Cement Co., 341 Mo. 744, 108 S. W. (2d) 343; Heim Brewing Co. v. Belinder, 97 Mo. App. 64, 71 S. W. 69; Finck v. Schneider Granite Co., 187 Mo. 244, 86 S. W. 213; State ex rel. v. Peoples Ice Co., 246 Mo. 168, 151 S. W. 101; Dietrich v. Cape Brewery & Ice Co., 315 Mo. 507, 286 S. W. 38.

In the latter case we said: ''Argument is advanced, founded upon the right of a person engaged in a business private in character, to buy from whomsoever he pleases, to sell to whomsoever he will, or to refuse to sell to a particular person. The right does not extend to the allowance of an agreement and concerted action thereunder of such person with others similarly engaged, in the accomplishment of a common design, to destroy the business of another, or to the making of an agreement forbidden by law, and concerted action thereunder, inflicting an injury upon the public. What the defendants could have done severally, by independent action, is essentially different from what they might do collectively, pursuant to an agreement between themselves and by concerted action thereunder'' The case of Shaltupsky v. Brown Shoe Co., 350 Mo. 831, 168 S. W. (2d) 1083 is not applicable under the facts of the issues.

Inasmuch as defendants were attempting through its picket line to force plaintiff into [58] a combination which had the concerted purpose of preventing the sale of ice to non-union peddlers, and thus require it to make unlawful discrimination in its sale of ice, it follows that the purpose of the picketing was unlawful.

Picketing for unlawful purposes may properly be enjoined. See Fred Wolferman, Inc. v. Root et al., 356 Mo. 976, 204 S. W. (2d) 733, decide today by the court en banc, and the cases cited therein.

Defendants in this case cite the same decisions of the Supreme Court of the United States in support of their constitutional rights under which they may picket as were cited in the Wolferman case. We refer to that decision for the discussion of those cases and repeat here that they are distinguishable on the facts. We summarized that discussion by stating that none of such cases authorized picketing to induce an employer to do an unlawful act condemned by statute and contrary to public policy, under the constitutional guaranty of freedom of speech.

While the case of Bakery & Pastry Drivers, etc. v. Wohl, 315 U. S. 769 dealt with peddlers, described therein as ''venders'', of bakery goods it is not apposite here on the issues. The court found no unlawful conduct in that case. In an attempt to unionize the peddlers

both the baking companies which supplied the peddlers and customers of the peddlers, in some instances, were picketed. No baking companies were parties to that case. The trial court found that no customers were turned away from the baking companies by reason of the picketing. It also appeared that the baking companies which were then operating delivery routes through employee drivers had notified the unions that at the expiration of their contracts they would no longer employ drivers but would permit the drivers to continue to distribute their baked goods as peddlers. The state court had enjoined the picketing upon the complaint of some of the peddlers on the ground no labor dispute was involved within the meaning of the state statute. Of this the Supreme Court said: "Of course that does not follow: one need not be in a 'labor dispute' as defined by state law . . . to express a grievance in a labor matter by publication unattended by violence, coercion, or conduct otherwise unlawful or oppressive."

In Milk Wagon Drivers Union, etc. v. Lake Valley Farm Products, Inc., 311 U. S. 91 the union was attempting to organize the peddlers of milk, but as we read the case the picketing which was held lawful was confined to the places of business of the peddlers' customers, and the dairies which supplied the peddlers were not picketed. In that case too, the court observed that increasing use of peddlers to distribute milk caused decreased employment of union milk drivers. It also appears in Milk Wagon Drivers Union, etc. v. Meadowmoor Dairies, 312 U. S. 287, where picketing was enjoined because of violence, that the picketing was confined to peddlers' customers.

In Carpenters and Joiners Union, etc. v. Ritter's Cafe, 315 U. S. 722, the court upheld the injunction against picketing which a Texas Court has ordered on the ground the picketing constituted a violation of the state anti-trust law. However, the Supreme Court's opinion did not discuss the issue on the anti-trust law, but based its decision on the theory that a state may confine the sphere of communication by picketing to that directly related to the dispute.

The decree in this case forbidding picketing by defendants forbade only the picketing about plaintiff's premises. We affirm the decree. There is nothing in the decree which restrains defendants from informing the public of any labor dispute they may have with the peddlers by any lawful means of dissemination of information, including picketing, wherever the same may be proper. Under these circumstances we hold the decree does not contravene defendants' right of free speech under the Federal or State Constitutions.

Complaint is made that the petition failed to allege an unlawful combination in restraint of trade such as prescribed by Section 8301, and plaintiff failed to prove one. The court found after hearing evidence that defendants had combined in [59] unlawful restraint of trade. We find the proof of such an unlawful combi-

678

nation was sufficient, and as shown above the combination was conceded by defendants as to the violation of the statute in attempting to prevent the sale of ice to non-union peddlers. As to the sufficiency of the petition we find its allegations are somewhat general and well might have been stated in greater particularity. But defendants waived their right to compel this by timely motion  Hamilton v. Linn, 355 Mo. 1178, 200 S. W. (2d) 69. However, even in its general terms we find the petition sufficiently alleges an unlawful combination in restraint of trade such as Section 8301 condemns.

For the reasons stated, the judgment is *affirmed*. All concur.